**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MUNICIPALITY OF PRINCETON, NEW JERSEY,<br><br>Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 23-22756 (MAS)(JTQ)<br><br>**MEMORANDUM OPINION AND ORDER** |

At issue is Plaintiff Municipality of Princeton, New Jersey's ("Plaintiff") motion to determine the triggering date of Defendant Ace American Insurance Company's ("Defendant") duty to preserve evidence. ECF No. 62. The Court has considered the parties' submissions in support of and in opposition[1] to the pending motion and decides the matter without oral argument per Rule 78(b) and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's motion is **GRANTED**, with the duty to preserve having been triggered on December 17, 2020.

[1] Defendant takes issue with the reply brief filed by Plaintiff in further support of the motion (ECF No. 64 ("Reply Br.") as it introduces new arguments and relies on evidence and caselaw introduced for the first time (ECF No. 65). The Court agrees and disregards any such argument, caselaw, and evidence, to the extent that it was not introduced to rebut Defendant's opposition. *Witt v. City of Vineland*, 2024 WL 1928213, at *19 (D.N.J. Apr. 30, 2024) ("It is axiomatic that a party 'may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief.'") (internal quotation omitted).

## I. BACKGROUND

This matter arises from an insurance coverage dispute regarding remediation costs at Plaintiff's property located at 298 River Road, Princeton, New Jersey (the "Property"). ECF No. 1-1 ("Compl.") ¶ 1. On March 1, 2019, Defendant issued a Premises Pollution Liability Insurance Policy No. PPL G27418934 005 (the "Policy") to Princeton, which provides coverage up to $1 million per "pollution condition" at the Property for costs or damages incurred, subject to a $25,000 self-insured retention limit per pollution condition, for the term from March 1, 2019 to March 1, 2020 with a full retroactive date. *Id.* ¶¶ 2, 10.

On June 11, 2019, the New Jersey Department of Environmental Protection ("NJDEP") inspected the Property and discovered illegal dumping or disposal of construction and fill materials. *Id.* ¶ 7. Princeton retained Whitman Companies, Inc. ("Whitman") to assess and remediate the conditions at the Property on June 17, 2019. ECF No. 62-2 ("Certification of Robert J. Mellinger" or "Mellinger Cert.") ¶ 5. Shortly thereafter on June 20, 2019, Plaintiff sent Defendant notice of the illegal dumping and made a claim for coverage (the "Claim"). Compl. ¶ 8. On June 26, 2019, Defendant acknowledged receipt of the Claim and noted that Plaintiff may qualify for potential coverage under Coverage A of the Policy, under the definition of "illicit abandonment." *Id.* ¶ 10. However, Defendant also required that Plaintiff obtain ACE's consent prior to retaining any environmental expert or incurring remediation costs, including submitting copies of any plans prior to work being performed at the Property. *Id.*

The Parties continued discussing coverage and remediation plans over the following two months, and in August of 2019, Defendant retained TRC Companies, Inc. ("TRC"), an environmental consulting company, to assess Whitman's scope of work. Mellinger Cert., Ex. D, at ACE_003826. On July 7, 2020, the Parties, TRC, and Whitman participated in a conference call regarding Whitman's latest proposal, and Plaintiff requested that Defendant approve the proposal so work could begin. Compl. ¶ 20.

On September 9, 2020, after having received no approval from Defendant, Plaintiff sent Defendant a demand for coverage letter (the "First Demand Letter"). *Id.* ¶ 21. Thereafter, on September 30, 2020, Plaintiff sent a second demand for coverage letter, this time threatening to "consider undertaking legal action" should Defendant fail to respond by October 2, 2020 (the "Second Demand Letter"). ECF No. 62-1 ("Mov. Br.") at 7; Compl. ¶ 22. Receiving no response, Plaintiff sent a third letter (the "Third Demand Letter"), on December 1, 2020, stating that in absence of a response, Plaintiff would proceed with the work outlined in Whitman's proposal and reserved all rights and remedies against Defendant, if forced to do so. Compl. ¶ 24.

On December 17, 2020, Defendant sent Plaintiff a letter denying coverage. *Id.* ¶ 25. Plaintiff responded on December 22, 2020, advising that it would proceed with Whitman's proposal and again reserving its rights and remedies. *Id.* ¶ 27; Mellinger Cert., Ex. P, at P_12892-12893. On January 19, 2021, Defendant sent a letter reiterating its reservation of rights (Mellinger Cert., Ex. Q, at P_12984-12895), to which Plaintiff responded with a letter that same day expressing its disagreement

with the denial of coverage and again advising Defendant that it would proceed with the necessary work to the Property. *Id.*, Ex. R. at P_12896-12897.

Whitman proceeded with its remediation efforts, at Plaintiff's directive, from January 2020 through October 2023. *Id.* ¶ 33. After obtaining a final assessment of costs, Plaintiff filed its Complaint on October 31, 2023. *Id.* ¶ 33, 34.

After commencing discovery, Plaintiff learned that Defendant had destroyed Steven Geydoshek's ("Geydoshek"), the Senior Claims Manager assigned to the Claim, electronically stored information ("ESI") in September 2021. *Id.* Ex. S, at 1-2. Additionally, in March 2025, Defendant deleted the ESI of Thomas Belli ("Belli"), the lead underwriter on the Policy. Defendant's counsel alerted Plaintiff to these two occurrences on September 2, 2025. *Id.*

The issue before the Court is the date at which Defendant's duty to preserve evidence attached. Plaintiff first raised this issue by way of letter on November 10, 2025. ECF No. 43. Defendant responded on November 12, 2025. ECF No. 44. With leave of Court, Plaintiff filed the instant motion on January 2, 2026, asking the Court to determine that Defendant's duty to preserve evidence was triggered on September 9, 2020, with the issuance of the First Demand Letter. ECF No. 62. The motion is fully briefed and ripe for decision.

## II. LEGAL STANDARD

The duty to preserve relevant evidence is triggered and attaches "when the party in possession of the evidence knows or reasonably should know that litigation is pending or probable." *Cty. of Camden,* 2011 U.S. Dist. LEXIS 164093, at

*11; *Bensel*, 263 F.R.D. at 152 ("While there is no duty to keep or retain every document in the party's possession, even in advance of litigation, it [a party] is under a duty to preserve what it knows or reasonabl[y] should know, will likely be requested in reasonably foreseeable litigation.") (internal quotation omitted).

The determination of when the duty attaches is governed by a "flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Nagy v. Outback Steakhouse*, 2024 WL 712156, at *3 (D.N.J. Feb. 21, 2024). When making such an inquiry, courts consider a variety of factors, including:

> the type and seriousness of the injury; how often similar kinds of incidents lead to litigation; the course of conduct between the parties, including past litigation or threatened litigation; and what steps both parties took after the incident and before the loss of the evidence, including whether the defendant initiated an investigation into the incident.

*Bistrian v. Levi*, 448 F. Supp. 3d 454, 468 (E.D. Pa. 2020).

Once the duty to preserve is triggered, a party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure [that] . . . relevant documents" are preserved. *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc.,* 2010 U.S. Dist. LEXIS 65323, at *3 (D.N.J. July 1, 2010) (citing *Major Tours, Inc. v. Colorel*, 2009 U.S. Dist. LEXIS 68128, at *2 (D.N.J. Aug. 4, 2009)).

## III. ANALYSIS

The question the Undersigned confronts in the instant motion is straightforward: When was Defendant's duty to preserve potentially relevant evidence triggered?

Plaintiff argues that the date is as early as September 9, 2020 and no later than December 17, 2020. Move. Br. at 13. Plaintiff assigns significance to this timeframe because, by this point, the Parties' "relationship had unambiguously shifted from cooperation to disagreement . . . making litigation reasonably foreseeable." Mov. Br. at 16. Defendant sees things differently; it argues that litigation was not reasonably foreseeable until the Complaint was filed, which is when its duty to preserve attached. While lacking in some respects[2], Plaintiff has the

[2] Plaintiff's argument rests largely on assertions made by Defendant in separate actions regarding its attorney work product. Plaintiff cites to two cases, *Formosa Plastics Corp., U.S.A. v. Ace Am. Ins. Co.* and *Cummins, Inc. v. Ace Am. Ins. Co.*, in which Defendant adopted the stance that it anticipates litigation when a difference in coverage positions or analyses becomes evident—well before the filing of a complaint. 2023 WL 8446228, at *7 (D.N.J. June 8, 2023), *aff'd* 2023 WL 6633852 (D.N.J. Oct. 12, 2023); 2011 WL 1832813, at *6 (S.D. Ind. May 2, 2011). Relying on these cases, Plaintiff asks that the Court estop Defendant from arguing that it could not have foreseen litigation prior to the Complaint in this action. The Court declines to do so. At issue in those two cases was whether certain documents were covered by the work-product doctrine. While there is substantial overlap between the work-product doctrine's "anticipation of litigation" standard and the duty to preserve's "reasonably foreseeable litigation" standard, the Court will not conflate the two. The Court is not persuaded by the scant caselaw cited by Plaintiff in an effort to treat the issues and standards as interchangeable. *See* Mov. Br. at 13 (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1323 (Fed. Cir. 2011) (citing *United States v. Adlman*, 134 F.3d 1194, 1203 (2d Cir. 1998); *see also* Reply Br. at 4 (citing *Great Am. Ins. Co. v. Twin Cities Dance & Ent. Co., LLC*, 2025 WL 1754485, at *6 (D. Minn. Mar. 5, 2025), *report and recommendation adopted sub nom*. *Great Am. Ins. Co. v. Twin Cities Dance & Ent., LLC*, 2025 WL 1772802 (D. Minn. June 27, 2025). *Micron* merely cites to a work-product doctrine case (*United States v. Adlman*, 134 F.3d 1194, 1203 (2d

better argument.

The Court finds *Dataflow, Inc. v. Peerless Ins. Co.* to be particularly instructive. 2013 U.S. Dist. LEXIS 183398, at *13 (N.D.N.Y. June 6, 2013). In that case, the plaintiff submitted a claim to an insurer defendant seeking coverage for over $1.2 million in losses from theft. After the insurer defendant only agreed to pay $75,000 of the claim, the plaintiff sued for breach of contract. *Id.* at 2, 5, & 12. Akin to this matter, the plaintiff learned during discovery that the insurer defendant deleted certain ESI relevant to the plaintiff's original insurance claim. *Id.* at 13.

The *Dataflow* court was tasked with determining the same question presented here: When was the insurer defendant put on notice that litigation was reasonably foreseeable? There the court concluded that litigation was reasonably foreseeable when the carrier issued its letter limiting the amount of funds that it would pay on the claim. The court reasoned that "[a]t the time Peerless issued that letter, it was aware that Dataflow had retained an attorney, had communicated both directly and indirectly with that attorney, and knew that $75,000 was hundreds of thousands of dollars less than the amount claimed by Dataflow." *Id.* at 17. Put simply, "Peerless should have anticipated litigation when that letter was sent." *Id.*

This Court follows *Dataflow's* reasoning and logic. Here, Defendant's duty to preserve was not triggered on September 9, 2020, because Plaintiff's Demand Letter by itself is insufficient to show that litigation was reasonably foreseeable. Although

---

Cir. 1998)) with no discussion of how the standards should be treated. And the one case from Minnesota is insufficient to convince this Court that the standards should be interchangeable.

Plaintiff had retained an attorney, coverage had yet to be denied, and for all intent and purposes, Defendant was still actively reviewing Plaintiff's Claim to determine whether there would be coverage. The same is true for Plaintiff's Second and Third Demand Letters.

However, by the time that Defendant issued the coverage denial letter on December 17, 2020, it: (1) was aware that Plaintiff had retained an attorney; (2) had communicated with that attorney directly regarding coverage; and (3) knew that the Parties were $1 million apart in coverage positions. A reasonable party would clearly foresee litigation under these conditions. *See Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 194 (N.D.N.Y. 2009) (finding that the duty to preserve attaches when, among other factors, "the magnitude of loss is significant"); *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 13 (N.D.N.Y. 2012) (concluding that representation by counsel and engagement in negotiations with said counsel would lead a reasonable person to believe litigation will likely follow).

This also follows the "*Home Depot*" analysis applied by both parties. The Undersigned in *Est. of Tattoli v. Home Depot U.S.A., Inc.*, considered a variety of factors in determining when the duty to preserve is triggered, including:

> [T]he type and seriousness of the injury; how often similar kinds of incidents lead to litigation; the course of conduct between the parties, including past litigation or threatened litigation; and what steps both parties took after the incident and before the loss of the evidence, including whether the defendant initiated an investigation into the incident.

2025 WL 1837567 (D.N.J. July 3, 2025) (quoting *Bistrian v. Levi*, 448 F. Supp. 3d 454, 468 (E.D. Pa. 2020).

Applying those factors to this case: (1) Plaintiff alleges an injury of $1 million (the Policy limit); (2) while not all claim denials result in litigation, it is relatively common for claim disputes valued at $1 million to lead to legal action, especially when the injured party is a municipality with tax-payer money at stake; (3) Plaintiff issued multiple Demand Letters, asserted that it disagreed with the coverage denial, and stated that it would proceed with the work while reserving all legal rights and remedies; and (4) as promised, Plaintiff proceeded with the work at the Property and promptly initiated the lawsuit upon obtaining a final assessment of costs.

Considering these circumstances, the Undersigned finds that the duty to preserve attached on December 17, 2020. At that point, Defendant should have reasonably foreseen that litigation was likely and promptly executed a litigation hold upon issuance of the coverage denial letter.

## IV. CONCLUSION AND ORDER

Accordingly,

**IT IS** on this 31st day of August 2026,

**ORDERED** that Plaintiff's motion to determine the triggering date of Defendant's duty to preserve evidence (ECF No. 62) is **GRANTED**; and it is further

**ORDERED** that the Parties are to take notice that the duty to preserve evidence was triggered on December 17, 2020; and it is further

**ORDERED** that Clerk is to terminate ECF Nos. 62 and 65.

s/ Justin T. Quinn
HON. JUSTIN T. QUINN
United States Magistrate Judge